IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRIAN SHAFFER** : | |
|    Plaintiff, : | |
| : | |
| v. : | |
| : | **Civil Action No. 2:20-cv-3415** |
| **PENNSBURY SCHOOL DISTRICT** : | |
|    Defendant. : | |
| : | **JURY TRIAL DEMANDED** |
| : | |

**RESPONSE IN OPPOSITION OF DEFENDANT,
PENNSBURY SCHOOL DISTRICT, TO PLAINTIFF'S MOTION TO COMPEL**

Defendant, Pennsbury School District ("the District"), by and through its counsel, Sweet, Stevens, Katz & Williams, LLP, hereby submits the following Response in Opposition to Plaintiff's Motion to Compel, and avers as follows:

**Background**

1. On July 13, 2020, Plaintiff, Brian Shaffer, initiated this action against the Defendant by way of filing a Complaint which alleges Title VII of the Civil Rights Act of 1964 and Pennsylvania Human Relations Act, 43 P.S. §§ 951-963, Retaliation against the District. (ECF Doc. No. 1).

2. The Complaint focuses almost exclusively on an April 15, 2019 interaction that Plaintiff had with a kindergarten student, the subsequent paid leave that Plaintiff was placed on pending law enforcement's investigation of the same, and how the District's handling of this investigatory process was allegedly a form of retaliation against Plaintiff that was spearheaded

by District Superintendent, Dr. William Gretzula, through a theory of respondeat superior liability. (*Id.* at ¶¶ 18-33).[1]

3.       The Complaint also alleges that Dr. Gretzula's plan to "clean house"[2] was supported by *School Board Director*,[3] Joshua Waldorf. (*Id.*).

4.       On October 29, 2020, the District provided initial disclosure documents which clearly indicate that members of the District's Teacher's Union approached the District's Human Resources Director regarding the work environment that Plaintiff created at Fallsington Elementary School ("Fallsington"). The documents further indicate that the District's Director of Human Resources, Bettie Ann Rarrick, and Director of Elementary Education, Michele Spack, conducted the investigation regarding the environment at Fallsington; and it was during this investigation that they learned about the April 15, 2019 incident. Neither Dr. Gretzula nor Mr. Waldorf had anything to do with this investigation; and Ms. Rarrick and Ms. Spack are both mandatory reporters pursuant to 23 Pa. C.S.A. § 6311. These facts were reiterated to Plaintiff's Counsel in the District's Responses to Plaintiff's First Set of Interrogatories and Requests for Production.

5.       Despite the aforementioned sum and substance of the Complaint being limited to the April 15, 2019 incident and subsequent investigation, and despite Counsel being made well-aware of the fact that neither Dr. Gretzula nor Mr. Waldorf had anything to do with the

---

[1] Notably, the Complaint admits that no timely suit was filed related to the claims which comprised the Plaintiff's initial EEOC Charge for a Hostile Work Environment 530-2018-04794 (ECF Doc. No. 1 ¶¶ 13-15).
[2] While Dr. Gretzula has not been deposed, he denies ever making this alleged comment. In addition, Mrs. Redner's "corroboration" of this alleged statement (ECF Doc. No. 7 at page 1) is by way of double hearsay.
[3] Contrary to the assertions made in the Motion to Compel, Mr. Waldorf has at all relevant times been a Pennsbury School Board Director, and he is not a licensed attorney or the District's Solicitor.

investigation, the District has nonetheless provided several hundred documents related to EEOC Charges and/or Federal Complaints which, in all candor, are not capable of yielding relevant information because Plaintiff's asserted link, the alleged discrimination by Dr. Gretzula, is not present in this case, given that Dr. Gretzula had absolutely no involvement in the investigation of the April 15, 2019 incident.

### Attorney-Client Privilege Dispute

6.  In sum, Plaintiff has filed a Motion to Compel[4] production and seeks: 1) unredacted transcripts related to *Morett v. Gretzula, et al.* E.D.Pa. No. 2:20-cv-00872-PD; 2) "notes" referred to former School Board President, Jacqueline Redner, during her deposition; 3) all discovery produced by all parties in related cases; 4) all other notes relating to all executive board meetings described in Ms. Redner's deposition and any subsequent executive session that contains information relevant to any EEOC complainant's case; 5) the ability to depose Mr. Waldorf without interjection of Attorney-Client privilege; 6) the opportunity for any other party to the communications (unspecified) involving Ms. Redner to be allowed to testify without objection; and 7) that all notes or other documents relating to any of these meetings or conversations must also be produced. (ECF Doc. No. 7 at page 5).

7.  Regarding these requests in the order that they are addressed in paragraph no. 6, Counsel for the District has previously represented that: 2) the District does not possess any "notes" referenced by Ms. Redner during her deposition; 3) all EEOC documentation related to three (3) other District Administrators who filed EEOC claims in or around the summer of 2018 has been produced, and the depositions in the *Morett* case are the only pieces of discovery in that matter as the Plaintiff in that case ignored the District's written discovery requests and failed to

---

[4] *See generally* ECF Doc. No. 7. Although no specific reference to FED. R. CIV. P. 37 is made therein, the filing effectively demands the same relief.

serve their own until nearly one month after the Court's deadline; and as for request nos. 4) and 7), there are no "notes" maintained regarding executive session discussion items. Consequently, the only items truly in dispute are Nos. 1); 5); and 6).

8. Counsel asserts entitlement to unredacted transcripts, and the opportunity to question witnesses *carte blanche* regarding matters related to Plaintiff's case (or other cases) that were discussed during executive sessions attended by the School Board members, Superintendent, and District Solicitors or Special Counsel who were only present to provide legal advice regarding the respective matters, on the basis that the discussions were either: a) not protected by the attorney-client privilege; or b) if they are privileged then the privilege was waived during the deposition questioning of Jacqueline Redner. For the reasons set forth below, the Motion to Compel must be denied.

### Attorney-Client Privilege Legal Standard

9. The attorney-client privilege applies to any communication in which:

> "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." *LaVeglia v. TD Bank, N.A.*, No. 2:19-CV-01917-JDW, 2020 WL 127745, at *1 (E.D. Pa. Jan. 10, 2020)

10. Here, the communications at the heart of the dispute occurred during private executive sessions in which the District's Solicitors (or Special Counsel), School Board Members, and the Superintendent were all present to discuss matters related to personnel and

litigation, and more importantly in which the attorneys were specifically present to provide advice.[5]

## Waiver of Privilege Legal Standard

11.     The parties agree that F.R.E. 502(a) sets forth the standard regarding waiver of communications protected by Attorney Client Privilege.  F.R.E. 502(a) states,

> " The following provisions apply, in the circumstances set out, to disclosure of a communication or information covered by the attorney-client privilege or work-product protection…When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."

12.     Further, "the party asserting the waiver bears the burden of establishing waiver." *See Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, LLC*, 202 F.R.D. 418, 423 (E.D. Pa. 2001).

13.     As Judge Bettlestone recently noted,

> "Waivers come in various sizes and shapes." *In re Keeper of Records*, 348 F.3d 16, 22 (1st Cir. 2003). Express waiver, for instance, generally occurs where a party discloses a confidential communication to a nonprivileged third party, or discloses work product materials in such a way as to "enable an adversary to gain access to the information." *Westinghouse*, 951 F.2d at 1428 (finding attorney-client privilege and work product protection waived as to internal investigation materials voluntarily produced to government agencies investigating alleged misconduct)…Where there has been no express waiver, a party may nevertheless impliedly waive attorney-client privilege and work product protection through his or her actions. *In re Human Tissue Prods. Liab. Litig.*, 255 F.R.D. 151, 158 (D.N.J. 2008). But the circumstances in which such an implied waiver might occur are

---

[5] The District's Solicitors and Special Counsel are available to present testimony regarding the nature of the privileged communications that they engaged in with the School Board and Superintendent.

limited. *See In re Keeper*, 348 F.3d at 23 (observing that because "the attorney-client privilege is highly valued[,] ... courts should be cautious about finding implied waivers"). A party impliedly "waives the [attorney-client] privilege **only** when he or she 'has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue.'" *U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 212 (3d Cir. 1999) (quoting *Rhône-Poulenc*, 32 F.3d at 863). "The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Rhône-Poulenc*, 32 F.3d at 863. *Utesch v. Lannett Co., Inc.*, No. CV 16-5932, 2020 WL 7260775, at *10 (E.D. Pa. Dec. 9, 2020).

14. Importantly, in the School District context, the Attorney Client Privilege exists between the School Board and its Counsel and it cannot be waived by individual School Board Members without the consent of the entire Board. *Sampson v. Sch. Dist. of Lancaster*, 262 F.R.D. 469, 477 (E.D. Pa. 2008).

15. Here, Plaintiff's contention that the District intentionally waived privilege by asking a deponent-School Board Member in another matter questions surrounding the circumstances in which that deponent divulged privileged communications to the Plaintiff without the consent of the entire Board is incorrect.

16. Plaintiff fails to acknowledge the fact that the deponent (Mrs. Redner) in the *Morett* matter was never asked a single question regarding the content of the privileged communications.[6] Plaintiff similarly chooses to ignore the fact that an objection was lodged when Plaintiff's counsel attempted to elicit testimony regarding the same. (See, ECF Doc. No. 7-3 at 170:4-6, 174:7-175:21).[7]

---

[6] Notably, Plaintiff does not allege that such a question was asked.
[7] *See* ECF Doc. No. 7-2 for the District's complete response to Plaintiff's request for unredacted transcripts and other discovery items.

17. Therefore, Plaintiff's argument that the District "intentionally" waived privilege by questioning Mrs. Redner regarding the impermissible manner in which she shared protected communications fails.

18. Further, citing the question and answer exchange which occurred during Mrs. Redner's deposition as a basis for being able to conduct *carte blanche* questioning of deponents in this matter regarding privileged communications far exceeds the scope of the parameters set by F.R.E. 502, and consequently, Plaintiff's request to do so must be denied.

19. The District has no objection to this Honorable Court conducting an in-camera review of the unredacted deposition of Jacqueline Redner, nor to a teleconference to address Plaintiff's requests. [8]

WHEREFORE, in consideration of the foregoing, the Pennsbury School District respectfully requests that the Court deny Plaintiff's Motion to Compel.

Respectfully submitted,

SWEET, STEVENS, KATZ & WILLIAMS LLP

Dated: January 25, 2021  By:  */s/ Justin D. Barbetta*
Justin D. Barbetta, Esquire, PA318221
331 Butler Avenue, Post Office Box 5069
New Britain, Pennsylvania  18901
Telephone:  (215) 345-9111
Facsimile:  (215) 348-1147
Attorney for Defendant, Pennsbury School District

---

[8] For ease of the Court's review, the redacted sections of the transcript can be found at ECF Doc. No. 7-3 at 31:16-21, 40:2-4, 41:1-8, 41:16-24, 53:3, 55:13-19, 56:1, 56:20-21, 57:17-23, 58:14-21, 59:7-14, 65:20-24, 66:8-67:4, 78:2-6, 78:23-79:2, 79:5-12, 91:8-12, 98:22-99:1, 100:1-3, 100:24-101:5, 119:6-24, 123:12-17, 123:19-124:10, 125:1-23, 127:5, 127:9-16, 141:15, 161:24-162:8, 162:23-24, 163:1-2, 164:21-22, 166:18-23, 169:12, 169:18-21, 170:11-24, 171:1-172:10, 173:3-6, 173:10-16, 177:3-8, 195:5-196:8, 200:12-201:8, 205:6-9.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRIAN SHAFFER**<br>      Plaintiff,<br><br>v.<br><br>**PENNSBURY SCHOOL DISTRICT**<br>      Defendant. | :<br>:<br>:<br>:<br>: **Civil Action No. 2:20-cv-3415**<br>:<br>: **JURY TRIAL DEMANDED**<br>: |

## CERTIFICATE OF SERVICE

   Undersigned counsel hereby certifies that a true and correct copy of the foregoing Response in Opposition to Plaintiff's Motion to Compel is available and was served electronically through the Court's ECF online filing system upon counsel of record:

Timothy P. Creech, Esq.
1825 Market Street, Suite 2626
Philadelphia, Pennsylvania 19103
Timothy@CreechandCreech.com

              SWEET, STEVENS, KATZ & WILLIAMS LLP

Dated: <u>January 25, 2021</u>   By: */s/ Justin D. Barbetta*
                 Justin D. Barbetta, Esquire, PA318221
                 331 Butler Avenue, Post Office Box 5069
                 New Britain, Pennsylvania  18901
                 Telephone:  (215) 345-9111
                 Facsimile:  (215) 348-1147
                 Attorney for Defendant, Pennsbury School District