**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIAN SHAFFER,** | : | |
| | : | **CIVIL ACTION** |
| Plaintiff, | : | No. 20-3415 |
| | : | |
| v. | : | |
| | : | |
| **PENNSBURY SCHOOL DISTRICT** | : | |
| | : | |
| Defendant. | : | |

McHUGH, J.                                                        March 15, 2021

## MEMORANDUM

This is an employment action in which Plaintiff Brian Shaffer, a school principal, alleges that he was the subject of retaliation by the Defendant, Pennsbury School District, after he filed a complaint before the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on sexual identity.   The present question is one of attorney-client privilege. In a separate employment action against this same school district, a former school board president gave deposition testimony that revealed communications that would ordinarily be protected. Counsel for the school district participated in the deposition, affirmatively asking questions, and allowing testimony about the communications into the record.  Other counsel then proceeded to ask questions along the same lines.  No objection from counsel for the school district was raised until near the end of the deposition, but even then the witness was permitted to answer.  Given these facts, I am persuaded that there was a waiver of attorney-client privilege, albeit an inadvertent, limited waiver.  I will therefore order production of the full transcript of the deposition to the Plaintiff in this action.

## I.      RELEVANT FACTS AND PROCEDURAL POSTURE

A different Pennsbury School District employee previously brought an employment discrimination case that in this court. *See Morett v. Gretzula et al.*, No. 2:20-cv-00872 (Diamond, J.).  In that case, counsel for the school district noticed the deposition of a former school board president of the district, Jacqueline Redner.[1]  *See* Redner Dep., Pl.'s Mot. Compel, Ex. C, ECF 7-3.  Importantly, counsel for Pennsbury in that case, Justin Barbetta, is also counsel in this matter.  *Id.*  It appears from the record that Redner had, in discussions with third parties, discussed a number of pertinent matters from executive sessions of the school board while serving as president, and that these statements found their way into the complaint in that action. *See, e.g.*, *Morett*, No. 2:20-cv-00872, Am. Compl. at ¶ 114, ECF 19.  It further appears that counsel's primary goal in taking the deposition was to establish that various matters were privileged, and that Redner did not have authority unilaterally to waive such privilege that would have applied to the matters disclosed.  *Id.* at 36, 174-75; Def.'s Resp. Mot. Compel 6, ¶ 14 (citing *Sampson v. Sch. Dist. of Lancaster*, 262 F.R.D. 469, 479 (E.D. Pa. 2008) (holding that school board president did not have unilateral authority to waive attorney-client privilege on behalf of school district).

During questioning by Pennsbury's counsel, Redner discussed the substance of various discussions that occurred at executive sessions of the school board, at which attorneys for the school board were in attendance.  *See, e.g.*, Def.'s Resp. to Mot. to Compel 4, ¶ 10.  She also discussed the content of conversations she had with attorneys for the school district outside of those meetings.  Redner Dep. at 174.  After Pennsbury's counsel completed his questioning,

---

[1] The deposition occurred on July 21, 2020.  *See* Redner Dep., Pl.'s Mot. Compel, Ex. C.

counsel for a co-defendant and counsel for the plaintiff proceeded to examine the substance of those and other communications.  Redner Dep. at 122.

In this case, counsel for Plaintiff Brian Shaffer has requested production of the transcript of that deposition.  Pl.'s Mot. Compl. 2.  Pennsbury complied, but initially redacted forty-five excerpts on the grounds of attorney-client privilege.  *Id.*, Ex. C.  Plaintiff then moved to compel the production of the redacted excerpts, arguing that many of the redactions would not be subject to attorney-client privilege, and that Pennsbury, acting through its counsel, had in any event waived any privilege by allowing its deponent to disclose them.[2]  *Id.*  Plaintiff has also moved to compel a trove of other materials on the basis of this alleged waiver.  *Id.*

The court instructed counsel for Pennsbury to produce an unredacted version of the transcript for *in camera* review, together with a detailed privilege log, stating with specificity the basis for each privilege invoked in accordance with Fed. R. Civ. P. 26(b).  ECF 12.  Defendant has since retracted a handful of its assertions of privilege but continues to maintain that the overwhelming majority of communications are privileged and have not been waived.

## II.     GOVERNING LEGAL STANDARD

The Federal Rules of Civil Procedure allow the parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  The attorney-client privilege "protects from disclosure confidential communications made between attorneys and clients for the purpose of obtaining or providing legal assistance to the client."  *In re Grand Jury Subpoena*, 745 F.3d 681, 687 (3d Cir. 2014) (internal citation omitted).  "Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly."  *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir.

---

[2] Plaintiff filed a letter motion on January 11, 2021, which the court deemed a formal motion to compel. *See* ECF 7-8.

Case 2:20-cv-03415-GAM   Document 13   Filed 03/15/21   Page 4 of 13

1991) (internal citations omitted).  For example, "[r]ecognizing that lawyers sometimes provide purely business advice, courts have held that the privilege applies only where the communication was made with 'the express purpose of securing legal not business advice.'"  *In re Niaspan Antitrust Litig.*, No. 13-MD-2460, 2017 WL 3668907, at *1 (E.D. Pa. Aug. 24, 2017) (internal citations omitted).  Where a privilege would otherwise exist, but there is a contention that it was waived, "the party challenging the privileged communication" bears the burden of establishing waiver.  *Sampson*, 262 F.R.D. at 478.[3]

Importantly, an attorney may waive the privilege while acting on behalf of his client.  *See Westinghouse*, 951 F.2d at 1420, 1431 (attorney-client privilege waived as to documents provided to third party by attorneys at behest of client).  When an attorney inadvertently discloses privileged communications, they become subject to the possibility of waiver.  *See* Fed. R. Civ. P. 502(b); *Fid. & Deposit Co. of Maryland v. McCulloch*, 168 F.R.D. 516, 523 (E.D. Pa. 1996) ("while the attorney-client privilege belongs to the client, the attorney, acting as the client's agent, may be sufficiently negligent in protecting the privilege that it may be waived"); *Maldonado v. New Jersey ex rel. Admin. Office of Courts-Prob. Div.*, 225 F.R.D. 120, 128 (D.N.J. 2004) (discussing "the doctrine of waiver of the attorney-client privilege resulting from inadvertent disclosure by an attorney").

Federal Rule of Evidence 502 governs waiver.  Rule 502(a) addresses intentional waiver, such as where "a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." Expl. Note to Fed. R. Civ. P. 502.  Because, as discussed below,

---

[3] Where there are both federal and state law claims in the same action, federal privilege law applies. *See Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000) (internal citations omitted).  Here, the Plaintiff has asserted claims of retaliation under both Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act.  Compl. ¶¶ 37-47.  Therefore, I will apply federal law in resolving this discovery dispute.

the goal of Pennsbury's counsel in the taking the deposition at issue was clearly for purposes of preserving attorney-client privilege, this case is appropriately analyzed under subparagraph (b) of the rule, which governs inadvertent disclosures.  *See* Fed. R. Evid. 502(b).

Rule 502(b) instructs that "a disclosure does not operate as a waiver in a federal or state proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed R. Civ. P. 502(b).  In undertaking this analysis, district courts in the Third Circuit often weigh the following five factors:

> (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure; and (5) whether the overriding interests of justice would or would not be serviced by relieving the party of its errors.

*In re Niaspan*, 2017 WL 3668907, at *2 (citing *Ciba-Geigy Corp. v. Sandoz Ltd*., 916 F. Supp. 404, 411 (D.N.J. 1995)).

## III.   DISCUSSION

At issue are thirty-nine redactions in the Redner deposition, which the Defendant argues are subject to attorney-client privilege.[4]  Def.'s Resp. Mot. Compel 4-5.  The first sixteen redactions reflect Redner's responses to the questioning of Pennsbury's counsel.  Redner Dep., Pl.'s Mot. Compel, Ex. C.  The remaining twenty-three redactions reflect Redner's responses to the subsequent questioning by counsel for the co-defendant, as well as counsel for the plaintiff, Cheryl Morett.  *Id.*  After conducting an *in camera* review of the unredacted transcript, it is clear that the majority of the redacted portions reflect communications that occurred at executive

---

[4] The Defendant has withdrawn six of its original forty-five redactions.

sessions of the Pennsbury school board, attended by attorneys for the school district. Some of the redacted portions also reflect communications between Redner and those same attorneys that occurred outside of executive sessions.

    A. <u>Applicability of the Privilege</u>

Absent waiver, most of the communications would be privileged. The majority occurred during executive sessions of the school board. However, the attorney-client privilege would not apply to every one of the 39 redactions at issue.[5] For example, the Defendant admits that some of the redacted statements relate to "business operations," but nevertheless asserts that those communications "could have potential legal implications."[6] *See In re Niaspan*, 2017 WL 3668907, at *6 (concluding that the privilege did not apply to certain communications because they "conveyed business, not legal advice").[7] But I need not grapple with whether every assertion of privilege is valid, because I find that the privilege was waived.

    B. <u>Waiver</u>

Plaintiff argues that Pennsbury's counsel intentionally waived the privilege by directing questions to Redner that elicited these privileged communications, and by failing to object when

---

[5] The Pennsylvania Sunshine Act provides a handful of circumscribed reasons for which an agency is permitted to conduct an executive session. *See* 65 Pa. C.S.A. § 708. Those reasons include, but are not limited to, consulting with attorneys on legal matters. *Id.* As such, it appears self-evident that not every communication at such meetings will be "between attorneys and clients for the purpose of obtaining or providing legal assistance to the client," and therefore subject to attorney-client privilege. *In re Grand Jury Subpoena*, 745 F.3d at 687.

[6] This assertion appears in the sealed privilege log that Defendant provided to the Court on February 24, 2021.

[7] Pennsbury also argues that many of the redactions are irrelevant, Def.'s Resp. Mot. Compel 3, but "relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged . . .." *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994).

other counsel sought privileged information.  Pl.'s Mot. Compel 3-4.  I am not prepared to hold

that the privilege was waived merely by calling for the deposition and questioning the witness.  It

would be proper for Pennsbury's counsel to try to establish that the witness had, in fact, divulged

privileged communications to the plaintiff in that case, with the apparent intention of excluding

such evidence later.  *Id.* at ¶ 16-17; *see* 262 F.R.D. at 477.  In that regard, relying on *Sampson*,

Pennsbury emphasizes that "in the School District context, the Attorney Client Privilege exists

between the School Board and its Counsel and it cannot be waived by individual School Board

Members without the consent of the entire Board." Def.'s Resp. to Mot. to Compel 6, ¶ 14; *see*

262 F.R.D. at 479.  Pennsbury further argues that the questions by its counsel were not phrased

in a way that called for the disclosure of privileged communications. Def.'s Resp. to Mot. to

Compel 6, ¶ 16.

      As to who has the power to waive the privilege, Pennsbury is correct that Redner, both

because she was only one member of the school board, and a former member at that, could not.

*See* 262 F.R.D. at 479.  Notably, Plaintiff does not even argue that Redner waived the privilege.

But counsel for the district had the ability to waive attorney-client privilege, so the analysis must

focus on whether Pennsbury's counsel waived the privilege through his conduct at the

deposition.  *See Westinghouse*, 951 F.2d at 1431 (attorney-client privilege waived when

attorneys provided documents to third party at behest of client);  *Maldonado*, 225 F.R.D. at 128

(discussing "the doctrine of waiver of the attorney-client privilege resulting from . . . disclosure

by an attorney");  *Ciba-Geigy Corp.,* 916 F. Supp. at 406-07, 414 (finding inadvertent disclosure

where counsel provided privileged document as exhibit for deposition).

      As to the affirmative questions posed by district counsel, I agree that counsel did not

explicitly seek to elicit privileged information: Counsel: "I am not asking you what was said or

not said.  But you were present for that meeting, correct?"; and Counsel: "So as far as paragraph 114 [of the *Morett* complaint] is concerned, you are saying that the executive session during -- and I am not talking about what the alleged comment was -- you are saying there was an executive session on December 21st of 2017?".  Redner Dep. at 36-37.[8]  Nonetheless, as discussed below, counsel's failure to prevent disclosure gives rise to waiver.

        i.      <u>Questioning of Deponent by Pennsbury's Counsel</u>

Sixteen of the redactions are of answers given by Redner in response to questions posed by counsel for the school district.  Although counsel tried to clarify that he was not seeking privileged *content,* he failed to stop Redner from answering his questions when the answers repeatedly drifted into the zone of privileged communications.  For example, in asking the witness whether she had told the plaintiff in *Morett* about another board member's use of an epithet, quoted in the *Morett* complaint, counsel for Pennsbury allowed her to expand on the discussion during the executive session where it occurred and discussions with school district counsel.  *Id.* at 55.  He admonished her for going too far in his answer, but did not stop her from giving the answer, a pattern that continued throughout the deposition.  *Id.*  When a witness is repeatedly allowed to reveal privileged information in response to questions posed by counsel for the holder of the privilege, I am compelled to conclude that counsel failed to take "reasonable steps to prevent disclosure" as required by Rule 502(b)(3).  *See Fid. & Deposit Co. of Maryland*, 168 F.R.D. at 523 (finding privilege waived where "the attorney, acting as the client's agent,

---

[8] Nor is this a case where the party asserting privilege injected the advice of counsel into the litigation. *See Rhone-Poulenc*, 32 F.3d at 863.  Here, it is clear that the plaintiff in *Morett* brought arguably privileged communications into the litigation by relying on such communications with Redner in the averments of her complaint.  *See Morett.*, No. 2:20-cv-00872, ECF 19 at ¶ 114.  Counsel Barbetta's attempt to identify those communications as privileged for the apparent purpose of asserting an evidentiary objection later materially differs from the examples outlined in *Rhone-Poulenc.* 32 F.3d at 863.

[was] sufficiently negligent in protecting the privilege").  As to all of the answers given in response to questioning by Pennsbury's counsel, I must find that any privilege was waived.

    ii.    <u>Questioning of Deponent by Counsel for the Co-Defendant and Counsel for the Plaintiff</u>

Turning to Redner's responses to questions posed by counsel for the co-defendant and counsel for the plaintiff, the minimal steps taken by Pennsbury's counsel to preserve the privilege did not go far enough.  No objections were lodged during the line of questioning from counsel for the co-defendant, yet Pennsbury now seeks to protect seven statements made by the witness.  In one exchange, Redner disclosed—at length—private communications between district counsel Mike Clarke and board members regarding issues with the district's Superintendent, without objection.  Redner Dep. at 123-24.

Counsel for the plaintiff, Ms. Morett, then questioned the witness.  Counsel for Pennsbury finally objected but not until after the witness had already made eight statements that Pennsbury now deems to be privileged.  *Id.* at 157-169.  And even when the objections were lodged, the school district's counsel did not attempt to prevent the witness from answering.  *Id.* at 170-74.  For example, when counsel for the plaintiff asked directly about the nature "of the discussion in executive session," Pennsbury's counsel should have instructed Redner not to respond.  *Id.* at 170.  Similarly, he should have instructed Redner to stop answering when she began discussing the contents of a phone call with school district attorney, Mike Clarke.  *Id.* at 174-177.  *See Preyer v. U.S. Lines, Inc.*, 64 F.R.D. 430, 431 (E.D. Pa. 1973), *aff'd*, 546 F.2d 418 (3d Cir. 1976) (recognizing expectation that counsel will instruct deponent not to answer questions where communications are privileged).

Rule 30, the Federal Rule of Civil Procedure specifically governing depositions, recognizes the necessity of instructing a witness not to answer when privilege is at stake:  "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege."  Fed. R. Civ. P. 30(c)(2); *see Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999) (counsel's failure to object to all questions designed to elicit privileged information and to instruct deponent not to answer those questions resulted in waiver of privilege)*; Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 460 (N.D. Cal. 1978) (counsel's failure to instruct third-party deponent not to respond to question eliciting privileged communication resulted in waiver of privilege).  Even the most draconian decision on limiting the participation of counsel, *Hall v. Clifton Precision*, 150 F.R.D. 525, 529  (E.D. Pa. 1993), a case I view as going too far, recognizes a need to preserve privilege.[9]

Admittedly, the deposition was conducted under the "usual stipulations" reserving objections until the time of trial.  But I can find no decision holding that this convention protects counsel who allows privileged information to be entered into the record.  *See Fodelmesi v. Schepperly*, No. 87 CIV. 6762 (KMW), 1990 WL 115607, at *3 (S.D.N.Y. Aug. 10, 1990) (Wood, J.) (finding that "the usual stipulations" do not override duty to assert privilege); *W.C. Grace & Co. v. Pullman, Inc.,* 74 F.R.D. 80, 85 (W.D. Okla.1977) (the practice of objections being noted "cannot be followed as to a privilege asserted during a deposition because such disclosure would undermine the protection afforded by the privilege and would constitute a waiver of such privilege").  That is true even where the witness is not counsel's client.  *See Perrignon,* 77 F.R.D. at 461. ("[a]t the very least" counsel was required make an effort to stop a

---

[9] In fact, despite the many restrictions *Hall* attempted to place on attorneys' representation of their clients, it explicitly recognized the problem that exists here: "privileges are violated not only by the admission of privileged evidence at trial, but by the very disclosures themselves." 150 F.R.D. at 529.

former corporate officer witness from answering beyond simply noting an objection).   As noted above, Rule 30(c)(2) specifically allows for counsel's intervention, and Rule 30(d)(3) permits counsel to move to terminate a deposition and seek a ruling from the court.  *See* Fed. R. Civ. P. 30.

In addition to the requirement that counsel take "reasonable steps to prevent disclosure" under Rule 502(b)(2), subparagraph (b)(3) requires consideration of whether the holder of the privilege "promptly took reasonable steps to rectify the error." Fed. R. Evid. 502(b)(3). Pennsbury does not contend that its counsel took any action following the Redner deposition to assert a privilege as to her testimony, such as seeking a protective order, and a review of the docket in *Morett* does not show any filing addressing her testimony.  *See Morett*, No. 2:20-cv-00872.  Nor can Pennsbury argue that the waiver, having occurred in *Morett*, is limited to that case, as such distinction is immaterial. *See Westinghouse,* 951 F.2d at 1426 (rejecting the selective waiver rule).

In summary, reasonable steps were not taken to protect the privilege, and no subsequent steps were taken to rectify disclosure.

C.  Scope of Waiver

Based on this waiver, Plaintiff seeks an abundance of other materials, including the witness's notes referred to during the deposition, "all other documents referred to in all depositions; all discovery produced by all parties in the related cases; and other notes relating to all executive board meetings described in Ms. Redner's deposition."  Pl.'s Mot. Compel 5. Beyond that, Plaintiff also seeks various emails discussed during the deposition, and to depose school board member Joshua Waldorf, referenced numerous times in the Redner deposition, as well as any other party to the communications involving Redner, "without interjection of

attorney-client privilege relating to the subject matters of Ms. Redner's deposition testimony."
*Id.*

As to the witness' notes that she prepared in advance of testifying, they may have been preserved to share with counsel in *Morett.*  Redner Dep. 11.  Plaintiff's request for their production is proper.  But for Plaintiff to be entitled to "undisclosed communications or information," the waiver would need to be intentional in accordance with Rule 502(a).  I have concluded that it was not.  The waiver should therefore be limited to the statements reflected in the redacted portions of the Redner deposition, and the specific documents noted above.  *See* Fed. R. Evid. 502(b); *In re Teleglobe Commc'ns Corp.,* 493 F.3d 345, 361 (3d Cir. 2007), *as amended* (Oct. 12, 2007) (whether waiver extends to undisclosed communications is a question of fairness);  *Lawless v. Delaware River Port Auth.*, No. CIV.A. 11-7306, 2013 WL 180347 at *3-4 (E.D. Pa. Jan. 16, 2013) (Dubois, J.) (waiver resulting from statements made during deposition limited to the statements themselves).

In discussing the issue of fairness in *Teleglobe,* the court focused on the situation where the holder of the privilege made selective disclosures and sought to prevent its opponent from gaining a more accurate sense of the facts.  493 F.3d at 361.  Here, Ms. Redner did not have the authority to make certain disclosures, which found their way into a civil complaint against the school district.  Pennsbury's counsel was attempting to address that situation.  For the reasons set forth above, I am compelled to find waiver as to the transcript of the testimony.  But a full subject matter waiver of the attorney-client privilege may not be found lightly.  *See* Fed. R. Evid. 502(b).  It is still the school district that holds the privilege, and it was not intentionally waived.  Any further disclosure is therefore unwarranted.

**IV.     CONCLUSION**

Plaintiff's motion to compel will be granted to the extent that it seeks the

Redner deposition transcript without redactions, and the notes Redner prepared in advance of her

deposition, to the extent those notes still exist.  It will be denied to the extent that it seeks

additional, undisclosed communications and materials.

An appropriate Order follows.

/s/ Gerald Austin McHugh
United States District Judge